UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARISELA ZAMORA, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § CIVIL ACTION NO. 5:19-CV-06037 |
| TEXAS ROADHOUSE, INC., and | § |
| TEXAS ROADHOUSE DELAWARE, | § JURY TRIAL DEMANDED |
| LLC, | § |
| | § |
| Defendants. | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### SUMMARY

1. The case implicates Defendants Texas Roadhouse, Inc.'s and Texas Roadhouse Delaware, LLC's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage rate, the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. 290.500, et seq., and Missouri common law for Defendants' failure to pay Plaintiff all earned minimum wages.

2. Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Missouri, the MMWL. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

1

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. (stating the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and 50% of the Missouri minimum wage rate). *See* 29 U.S.C. 203(m); Mo. Rev. Stat. 290.500, *et seq*.

6. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the

floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8. Defendants' violated the FLSA, MMWL, and Missouri common law in the following respects:

   a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

   b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced her wages below the minimum hourly wage required for tipped employees.

   c. **Violation for requiring Plaintiff to give up a portion of her tips:** Plaintiff was required to pay Defendants from her tips for customer walkouts, shortages, or errors in customer orders.

   d. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, making salads, cleaning the kitchen, cleaning ledges, dusting fans, washing trays, and washing appliances.

   e. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including, but not limited to, general cleaning of the restaurant, cleaning tables, rolling silverware,

3

refilling condiments, setting up tables, sweeping floors, and cleaning and stocking the serving line.

9. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Marisela Zamora is an individual residing in Kansas City, Platte County, Missouri. Her written consent to this action is attached hereto as Exhibit "A."

13. Defendant Texas Roadhouse, Inc., is a foreign for-profit corporation which does business in Texas. Defendant may be served process through its registered agent as follows: Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

14. Defendant Texas Roadhouse Delaware, LLC is a Delaware limited liability company and a subsidiary of Texas Roadhouse, Inc. It may be served process through its

registered agent as follows: Corporation Services Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

15. Defendants at all times relevant to this action have had sufficient minimum contacts with the State of Missouri to confer personal jurisdiction. Defendants conduct business throughout Missouri. Furthermore, Defendants contracted with and employed Missouri residents, have Missouri customers, market to residents of Missouri, and own property in Missouri.

## COVERAGE

16. At all material times, Defendants have been employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

17. At all material times, Defendant have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

18. At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

19. At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

20. At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose.

21. Defendants operate a nationwide chain of restaurants with the name "Texas Roadhouse" under the control of the same senior level management. Indeed, the restaurants advertise themselves as a unified entity through the same website.

22. Defendants represent themselves to the public as one restaurant operating at multiple locations. They share employees, have a common management, pool their resources,

5

operate from the same headquarters, have common ownership, and have the same operating name.

23. Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

24. Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

25. At all material times, Plaintiff was an "employee" of Defendant as defined by the MMWL, Mo. Rev. Stat. § 290.500(3).

26. At all material times, Defendants were Plaintiff's "employer" as defined by the MMWL, Mo. Rev. Stat. § 290.500(4).

## FACTS

27. Defendants operate a nationwide chain of restaurants under the trade name "Texas Roadhouse." Defendants employ tipped employees to provide services to their restaurant patrons.

28. Plaintiff worked as a waitress for Defendants from November 2017 to May 2018.

29. Defendants paid Plaintiff at an hourly rate below the Federal and Missouri minimum wage rates and attempted to use the tip credit to meet their minimum wage obligation to Plaintiff.

30. However, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide tipped employees, including Plaintiff, with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must

6

be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

31. Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff was engaged in a dual occupation while being compensated at the tip credit rate. While performing these non-tip generating duties, she did not interact with customers and could not earn tips.

32. These duties include but are not limited to the following: making salads, cleaning the kitchen, cleaning ledges, dusting fans, washing trays, and washing appliances, amongst other activities, that were not related to her tipped duties.

33. Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

34. Specifically, Defendants maintained a policy and practice whereby tipped employees, including Plaintiff, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to cleaning tables, rolling silverware, refilling condiments, setting up tables, sweeping floors, and cleaning and stocking the serving line.

35. Further, Defendants required Plaintiff to perform non-tipped side work at the start and end of every shift. This included times before the restaurant opened and after the restaurant closed and customers had left. Indeed, when the restaurant was closed Plaintiff had no opportunity to earn tips because customers were not there. At times, Plaintiff spent 30 minutes to

two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

36. However, Defendants did not pay tipped employees, including Plaintiff, the full minimum wage rate for this work. The duties that Defendants required tipped employees, including Plaintiff, to perform were duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

37. During Plaintiff's employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

38. When the tipped employees, including Plaintiff, performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

39. Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

40. Further, Defendants did not track or record the amount of time tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiff.

41. Defendants use a point-of-sale system to record hours worked by their tipped employees, including Plaintiff. Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiff.

42. In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

43. However, Defendants did not allow the tipped employees to clock in at the full minimum wage rate when performing non-tipped work described in this Complaint.

44. Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

45. Defendants further violated the FLSA, MMWL, and Missouri common law by enforcing a policy and practice of requiring tipped employees, including Plaintiff, to reimburse the restaurant from their tips when customers walked out without paying their bills, when the amount paid by a customer does not fully pay for a bill, or when there were errors in customer orders.

46. Moreover, Defendants violated the FLSA, MMWL, and Missouri common law by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including jeans, belts, and shoes. These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

47. Because Defendants pay their tipped employees at the minimum "tipped" hourly rate, any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

48. In other words, by requiring Plaintiff to pay for these work-related expenses, Plaintiff's hourly rate of pay was reduced by the amount of these uniform costs. As a result, Plaintiff was not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

49. Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff.

50. As such, Plaintiff was not compensated at the federally mandated minimum wage and Missouri minimum wage.

51. Defendants know or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff was not based on a good faith and reasonable belief that its conduct complied with the law.

52. Defendants may claim that they have complied with the law based upon the Department of Labor opinion letter FLSA2018-27 issued on November 8, 2018. However, every court to have considered this opinion letter, including this Court, has held that the opinion letter is not entitled to any deference. *See Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Miss. 2019); *Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019).

53. Even if this Court were to provide some deference to opinion letter FLSA2018-27, Defendants still failed to comply with the law. Defendants failed to provide proper notice, as

10

Case 5:19-cv-06037-FJG   Document 1   Filed 04/03/19   Page 10 of 14

stated in this Complaint. Defendants failed to pay even the minimum tip hourly rate, as stated in this Complaint. Defendants illegally took Plaintiff's tips, as stated in this Complaint.

54. Additionally, Defendants illegally took a tip credit for time spent performing tasks not contained in the O*NET Task list, including but not limited to, the time spent by Plaintiff making salads, cleaning the kitchen, cleaning ledges, dusting fans, washing trays, and washing appliances.

55. Finally, Defendants illegally required Plaintiff to perform side work that was not contemporaneous with her duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties. That is because Defendants required Plaintiff to perform non-tipped work 30 minutes to two hours before the restaurant was open or after the restaurant was closed and when the restaurant was not open to customers. During this time, Defendants paid below the minimum wage rate.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MISSOURI MINIMUM WAGE LAW
### FAILURE TO PAY THE MINIMUM WAGE

56. Plaintiff incorporates the preceding paragraphs by reference.

57. This count arises from Defendants' violation of the MMWL for its failure to pay minimum wages to Plaintiff.

58. During her employment with Defendants, Plaintiff was not exempt from the minimum wage provisions of the MMWL.

59. Defendants paid Plaintiff below the minimum wage rate in Missouri, in violation of MMWL, Mo. Rev. Stat. § 290.512.1.

## COUNT II
### VIOLATION OF THE MISSOURI COMMON LAW – UNJUST ENRICHMENT/QUANTUM MERUIT
### FAILURE TO PAY THE MINIMUM WAGE

60. Plaintiff incorporates the preceding paragraphs by reference.

61. Plaintiff conferred a benefit upon Defendants by working for below the minimum wage rate and reimbursing Defendants from their tips for customer walkouts/shortages/errors and for paying for work related expenses that were primarily for the benefit and convenience of Defendants.

62. Defendants were aware that they were receiving the benefit of this sub-minimum wage work at the time the work was performed and the deductions were made, and Defendants accepted and retained that benefit without paying fair compensation for the same.

63. Defendants' acceptance and retention of the benefit of Plaintiff's labor and the deductions taken from Plaintiff's wages and tips were inequitable and resulted in Defendants being unjustly enriched.

## COUNT III
### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

64. Plaintiff incorporates the preceding paragraphs by reference.

65. This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

66. Plaintiff was paid an hourly rate less than the minimum wage while working for Defendants.

67. Plaintiff was not exempt from the minimum wage requirements of the FLSA.

68. Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff being paid less than the Federal minimum wage rate. Defendants' violation of the FLSA was willful.

69. Defendants' practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA. Likewise, Defendants' automatic meal deduction violates the FLSA because it results in Plaintiff receiving less than the minimum wage.

70. Defendants' failure to pay the minimum wage to Plaintiff, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

71. Plaintiff is entitled to receive the difference between the federal minimum wage of $7.25 an hour and the tip credit adjusted minimum wage for each hour she worked.

72. Plaintiff is entitled to receive the difference between the Missouri minimum wage rate and the tip credit adjusted minimum wage for each hour she worked.

73. Plaintiff is entitled to reimbursement for all illegal deductions.

74. Plaintiff is entitled to reimbursement for all work-related expenses she paid.

75. Plaintiff is entitled to liquidated damages under Mo. Rev. Stat. § 290.527 and 29 U.S.C. § 216.

76. Plaintiff is also entitled to recover her attorney's fees and costs, as required by the FLSA and Missouri law.

## JURY DEMAND

77. Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

78. For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her:

a. Minimum wage compensation unadulterated by the tip credit;

b. Liquidated damages;

c. All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

d. An order requiring Defendants to correct their pay practices going forward;

e. Reasonable attorney's fees, costs, and expenses of this action;

f. Pre- and post-judgment interest; and

g. Such other and further relief to which Plaintiff may be entitled, both in law and in equity.

Respectfully submitted,

**LANGDON & EMISON LLC**
By: /s/ Brett Emison
Brett Emison, MO Bar #52072
Langdon & Emison LLC
911 Main Street, P.O. Box 220
Lexington, MO 64067
Telephone: (660) 259-6175
Telefax: (660) 259-4571
brett@lelaw.com
**ATTORNEY FOR PLAINTIFF**